### ELLIS v. HARTFORD FIRE INS. CO.
### (No. 3277.)

Court of Civil Appeals of Texas. Amarillo.
Oct. 2, 1929.

Rehearing Denied Nov. 6, 1929.

Vickers & Campbell, of Lubbock, for appellant.

Bledsoe, Crenshaw & Dupree, of Lubbock, for appellee.

RANDOLPH, J. This suit was brought by appellant as assignee by legal assignment of Doyle Perkins, and as trustee for the creditors of said Perkins, on an insurance policy. Judgment for the defendant by the court, who tried the case without a jury. From this judgment appeal has been taken to this court.

Doyle Perkins was engaged in the mercantile business at Belton, Tex. While in Belton, Perkins insured his stock of merchandise and fixtures against loss by fire with the appellee and received from appellee Texas Standard form insurance policy aggregating the sum of $8,700 on the merchandise and $800 on the fixtures.

As there is no statement of facts accompanying this record, for the purpose of the discussion of the evidence upon which the

trial court's judgment is based, we quote the judge's findings of fact as follows:

"(1) The court finds that the Hartford Fire Insurance Company issued and delivered policies of insurance as follows:

| No. | Date Issued | Date Expiration | Amount Stock | Fixtures |
|---|---|---|---|---|
| 983 | Feb. 6, 1925 | Feb. 6, 1926 | $1500.00 | |
| 984 | Feb. 9, 1925 | Feb. 9, 1926 | | $500.00 |
| 993 | June 15, 1925 | June 15, 1926 | 1000.00 | |
| 995 | July 29, 1925 | July 29, 1926 | 3200.00 | 300.00 |
| 998 | Aug. 18, 1925 | Aug. 18, 1926 | 3000.00 | |

"(2) All of said policies were written on the Texas Standard Fire Policy Form, the first four having been issued to Perkins & Holcomb and properly transferred with consent of the insurance company to Doyle Perkins on August 18, 1925, and the last described policy having been issued to Doyle Perkins. Each of said policies was issued and delivered by the agents of the defendant insurance company at Belton, Texas, and covered the stock of merchandise and fixtures owned by the insured at Belton, Texas. The total amount of the insurance on the stock of merchandise and fixtures under these policies aggregated $8,700.00 on stock and $800.00 on fixtures.

"(3) Thereafter about September 7, 1925, said Doyle Perkins determined to move his stock of merchandise and fixtures from Belton, Texas, to Lubbock, Texas. He advised with the agents of the defendant at Belton, Texas, who had issued the policies of insurance in question, about moving the merchandise to Lubbock, Texas, and continuing the policies of insurance in force and effect. Said agents agreed to the moving of said property to Lubbock, Texas, and assured Doyle Perkins that the policies of insurance would continue in force and effect and that proper entries would be made on the policies and on their records to show the consent of the company to the removal.

"(4) Perkins then removed his stock of merchandise and fixtures about September 7, 1925, to Lubbock, Texas, and shortly after his arrival in Lubbock delivered the policies of insurance above listed to the local agents of the defendant Company at Lubbock, Texas, to have the removal permit indorsed thereon. The removal permits were not indorsed on the policies and the said Doyle Perkins, about October 24, called for said policies and they were re-delivered to him. On said date the said Doyle Perkins elected to cancel all of said policies of insurance and wrote the agents of the defendant at Belton, Texas, who had issued the policies, instructing them to cancel all of said policies, and demanding of them the return of the unearned premium on all of said policies in the sum of $140.26, being the unearned premium as of date from September 7, 1925, until the expiration of said policies. It being the contention of said Doyle Perkins that the policies had never become effective in Lubbock, Texas, because of the failure to indorse on the policies a removal permit, and that therefore he was entitled to the unearned premium from September 7, 1925, the date of the removal.

"(5) Each of said policies were on the Texas Standard form and contained the following provision: 'This policy shall be cancelled at any time at the request of the insured; or by the company by giving five days notice of such cancellation. If this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate; except that when this policy is cancelled by this company by giving notice, it shall retain only the pro rata premium.'

"(6) The letter of Doyle Perkins instructing cancellation of the policies was received by the agents of the defendant company at Belton, Texas, on or before October 28, 1925. Thereafter, on October 28, 1925, Doyle Perkins drew a draft on said agents at Belton, Texas, for the sum of $140.26, and attached the policies thereto and sent them to a bank at Belton, Texas, to be delivered to said agents at Belton, Texas, upon the payment of said sum of $140.26. The draft was returned unpaid, the agents at Belton, Texas, claiming that the amount of the unearned premium was only $107.00, it being their contention that the cancellation became effective only on receipt of the letter by them dated October 24, 1925, and that therefore the unearned premium would date from said date. Thereafter and on November 10, 1925, Doyle Perkins wired the agents of the defendant at Belton, Texas, who had issued said policies, as follows: 'Insurance policies cancelled. Unearned premium one hundred forty dollars. Wire same at once.'

"Said wire was received by said agents at Belton, Texas, on November 10, 1925. On the same date Doyle Perkins wrote the defendant Hartford Fire Insurance Company at its home office at Hartford, Connecticut, as follows:

" 'Lubbock, Texas, Nov. 10, 1925.

" 'Hartford Fire Insurance Co., Hartford, Conn. Gentlemen: I took out $9,500.00 insurance with your company through your agents at Belton, Texas, on the following dates: August 18th, 1925, $3,000.00; June 15, 1925, $1,000.00; Feb. 9, 1925, $500.00; Feb. 6, 1925, $1,500.00; July 29, 1925, $3,500.00, for stock and fixtures for Belton, Texas, store, but moved same to Lubbock, Texas, on September 8, 1925, and said agents failed to put a removal permit on same and I called their attention to same and waited for some time thinking possibly that they would give this their attention, until I found out the insurance was not in force due to the fact the agents, Robertson Head Ins. Co., at Belton,

had failed to put the removal permit on policies so I just cancelled same and sent them together with draft asking them to please send me the unearned premium amounting to $140.26, on Sept. 8, 1925, but this they have refused to do and at the same time said that the amount due me only amounted to $107.00. Now I was without insurance for several weeks due to the fact they failed to put a removal permit on my policies and I think I am due this at once.

" 'Please give this your immediate attention, we are,

" 'Yours very truly,

" 'Perkins Mens Shop

" 'DP-ms.        [Signed]   Doyle Perkins.'

"This letter was received on November 14, 1925, at the home office of the defendant insurance company.

"Thereafter, on November 18, 1925, the home office of the defendant insurance company notified Doyle Perkins in writing that it had instructed its agents to pay him said unearned premium as demanded and on said date its agent, John Matthias, called on Doyle Perkins, at Lubbock, Texas, and paid Doyle Perkins the sum of $140.26, with legal interest thereon from September 7, 1925, to November 18, 1925, and the policies of insurance sued upon were delivered by Doyle Perkins to said Matthias on said date.

"When said policies were delivered to the said Doyle Perkins each of them had indorsed thereon the following: 'Cancellation of policy, September 8, 1925. Received of the Hartford Fire Insurance Company, $ ———, as returned premium on the within policy which is hereby cancelled and surrendered to the company. [Signed]   Doyle Perkins, Insured.'

"(7) On the night of November 17, 1925, the stock of merchandise and fixtures of said Doyle Perkins located at 1210 Avenue J, Lubbock, Lubbock County, Texas, and being the stock and merchandise and fixtures described in the policies sued on, was partially destroyed and damaged by fire originating from unknown causes. The Court finds that the reasonable value of the merchandise destroyed and damaged by the fire was $5,849.88, and the furniture destroyed and damaged of the value of $601.75, and that said amounts represent the actual loss and damage sustained by reason of said fire.

"(8) Previous to the fire on October 7, 1925, Doyle Perkins took out a policy of insurance with the Springfield Fire & Marine Insurance Company on his merchandise and fixtures in the sum of $3,000.00, and thereafter on October 28, 1925, he took out another policy of fire insurance on his stock of merchandise and fixtures with the Scottish Union & National Fire Insurance Company, in the sum of $9,500.00. Each of said policies was taken out by the said Doyle Perkins under the belief that he had cancelled his policies of insurance with the Hartford Fire Insurance Company and the agents of the Springfield

Fire & Marine Insurance Company and the Scottish Union & National Fire Insurance Company knew the facts with reference to the status of the Hartford Fire Insurance Company policies. The policies with the Springfield Fire & Marine Insurance Company and Scottish Union & National Insurance Company were in full force and effect at the time of the fire. That the total value of the stock and fixtures at the time of the fire and before it occurred was $13,316.39. The policies issued by said two last named insurance companies as well as the policies issued by the Hartford Fire Insurance Company, contained provisions for concurrent insurance and provided that in case of loss and damage by fire of the property insured each insurance company would bear its proportion of the loss; however, the Hartford Fire Insurance Company policies contained limitations on the amount of concurrent insurance permitted, which limitations would have been exceeded by the taking out of the insurance with the Springfield Fire & Marine and the Scottish Union & National Insurance companies, had the Hartford policies not been cancelled, unless such provision had been waived. Upon the questions as to whether the additional insurance clause of the policies had been cancelled and upon the question as to whether such violation, if any, had been waived by the agents of the Hartford Fire Insurance Company, the Court makes no finding, for the reason that, due to the Court's holding that the policies had been cancelled, further evidence as to the other defenses became immaterial.

"(9) After the fire the Springfield Fire & Marine Insurance Company and the Scottish Union & National Insurance Company paid L. C. Ellis, as trustee and assignee for Doyle Perkins, all of the loss and damage except the sum of $2,680.00, which sum they contended was the proportionate amount due by the defendant, Hartford Fire Insurance Company on its policies of insurance. Said two companies and L. C. Ellis agreed in writing that L. C. Ellis should sue the Hartford Fire Insurance Company in the event they refused to pay said sum of $2,680.00, and in the event and only in the event the court of last resort declared that said Hartford policies had been cancelled prior to November 17, 1925, that then the Springfield Fire & Marine Insurance Company and the Scottish Union & National Insurance Company would be liable to the said L. C. Ellis as trustee for said sum of $2,680.00 balance.

"(10) I find that on February 2, 1926, Doyle Perkins assigned and transferred all of his right, title, interest and claim in and to the policies of insurance herein sued upon to L. C. Ellis as trustee and assignee for the creditors of the said Doyle Perkins and that said L. C. Ellis is now the owner in his capacity aforesaid as trustee and assignee of said policies of insurance and has the right to

maintain, this suit for the collection thereof."

Upon this statement of the evidence, the trial court concluded as a matter of law as follows:

"The Court concludes that the policies of insurance sued upon were cancelled by the said Doyle Perkins prior to the fire in question on the night of November 17, 1925, and that notice of such cancellation was received by the defendant, Hartford Fire Insurance Company, prior to November 17, 1925. That the only controversy between the said Doyle Perkins and the agents of the defendant insurance company at Belton, Texas, was as to the amount of the unearned premium that was due and owing said Doyle Perkins. That said Doyle Perkins had the right under the contract of insurance to so cancel said policies of insurance at any time he desired and that such cancellation was effective immediately on receipt by the defendant insurance company or its agents at Belton, Texas, of the said Doyle Perkins' request for cancellation. That the said Doyle Perkins did make such request and the same was received by the agents of the defendant company and by the defendant insurance company prior to the date of the fire. That such cancellation was unaffected by the controversy as to the amount of returned premiums due.

"I further conclude that the written indorsement of cancellation on said policies and the receipt of the returned premium operated as a cancellation of said policies as of September 8, 1925.

"I further conclude as a matter of law that the policies having been cancelled prior to the date of the fire that the defendant Hartford Fire Insurance Company is not liable upon said policies."

Preliminary to his findings of fact and conclusions of law, the trial court tates:

"At the conclusion of the plaintiff's evidence, the defendant made a motion for a judgment on the sole ground that the plaintiff's own testimony showed that the policies had been cancelled by Doyle Perkins prior to the fire and the Court, being of the opinion that said motion was well taken, did not hear any further evidence as to any of the other defenses urged, but rendered judgment for the defendant insurance company on the ground that the policies had been cancelled."

From the above statement of the case, it will be seen that the only question presented for our decision is: 'Do the facts as found by the trial court authorize and sustain the judgment rendered by him? We are of the opinion that they do.

The plaintiff contends that when Perkins sent in his demand for a cancellation of the policies, such demand for cancellation was made upon the condition that the unearned premium should be returned. This is tantamount to saying to the appellee, "When you return my unearned premium, then I will consider the policies canceled." The record does not disclose any such conditional request, demand, or instruction, but it does show a distinct request for a cancellation of the policies and a distinct request for the return of the unearned premium without any condition appended to the request or demand for cancellation.

Be that as it may, the provision in the policies, quoted above, that the policy shall be canceled at any time at the request of the insured, does not contain any requirement that before such cancellation can be had, the unearned premium shall be returned. It would be a novel condition if the cancellation of the insurance policies should be denied the insured because the insurance company declined to return the unearned premium. In this case a dispute has arisen between the parties as to the amount of the unearned premium due the insured. If the cancellation of the policies is held up long enough by this disagreement, it would not only leave no unearned premium, but might, the policies thus being made to continue in force, bring the insured out in debt to the insurance company for further premiums. We confess that we cannot see any reason why demand by the insured for cancellation of the policies should be held in abeyance while the parties squabble over the amount of the unearned premium to be returned. There would be some good reason in holding that when the insured does not desire a cancellation of a policy and the insurance company notifies him of their intention to cancel, to require the insurance company to return the unearned premium before permitting it to cancel the policy, as it should return the compensation it had received for carrying the insurance to the termination of the policy, after the date of the cancellation; but there is no such reason operating in the case of the insured who requests the cancellation.

To sustain our holding, we cite Crown Point Iron Co. v. Ætna Insurance Co., 127 N. Y. 608, 28 N. E. 653, 14 L. R. A. 147; Stevenson v. Sun Ins. Office, 17 Cal. App. 280, 119 P. 529; Johnson & Stroud v. Rhode Island Ins. Co., 174 N. C. 201, 93 S. E. 735; Parsons & Arbaugh v. N. W. Nat. Ins. Co., 133 Iowa, 532, 110 N. W. 907; Roberta Mfg. Co. v. Royal Exch. Assurance Co., 161 N. C. 88, 76 S. E. 865; Gately-Haire Co., v. Niagara Fire Ins. Co., 221 N. Y. 162, 116 N. E. 1015, Ann. Cas. 1918C, 115; Schwarzchild et al. v. Phœnix Ins. Co. (C. C. A.) 124 F. 52; Mangrum et al. v. Law, etc., Ins. Co., 172 Cal. 497, 157 P. 239, L. R. A. 1916F, 441, Ann. Cas. 1917B, 907; Austin Fire Ins. Co. v. Polemanakos (Tex. Com. App.) 207 S. W. 924; El Paso Reduction Co. v. Hartford Fire Ins. Co. (C. C.) 121 F. 937.

The judgment of the trial court is therefore affirmed.